```
                IN THE UNITED STATES DISTRICT
                   FOR THE DISTRICT OF DELAWARE

x-----------------------------x
                              :
                              :
   HE LI, CHANGAI ZHUO, and    :
   ZEHAO LI,                   :
                              :
          Plaintiffs           :    Civil Action No. 06-733-JJF
                              :
   v.                          :
                              :
   MICHAEL CHERTOFF, et al.,   :
                              :
                              :
          Defendants.          :
                              :
x-----------------------------x
```

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTORY STATEMENT**

This is an action in which plaintiffs, He Li, Changai Zhuo, and their son, Zehao Li, seek an order compelling defendants to expedite their application to adjust status to lawful permanent residency. As set forth below, the case is uniquely inappropriate for judicial intervention.

By statute, adjustment of status is committed to the sound and unfettered discretion of the Secretary; neither the Immigration & Nationality Act ("the Act" or "the I.N.A."), nor the applicable regulations specify a time frame within an application must be adjudicated; the Act expressly removes adjustment-of-status decisions from the orbit of judicial review;

and, putting the Act to one side, the discretionary nature of the process at hand renders mandamus and review under the Administrative Procedure Act ("A.P.A.") completely inappropriate.

Not surprisingly, therefore, a host of cases have dismissed suits such as the instant action for lack of jurisdiction. Accordingly, for the reasons explained more fully below, the Government respectfully asks that this motion to dismiss be granted.

## II. PLAINTIFFS' ALLEGATIONS

Plaintiffs' allegations are straightforward. They allege that on or about April 10, 2004 they filed an I-485 application to adjust status and become a permanent resident of the United States; that receipt was acknowledged by the United Stated Citizenship and & Immigration Service ("USCIS") on April 15, 2004; and that on March 16, 2005, they submitted their fingerprints to USCIS so that the FBI could complete the required background checks of Plaintiffs. (Compl. ¶¶ 12, 14, 16.)

Plaintiffs allege furthermore that notwithstanding every inquiry they made, as well as congressional intervention, USCIS has not acted on their applications and that they are unable, therefore, to apply for naturalization. (Compl. ¶¶ 16-24.) Plaintiffs acknowledge, however, that the F.B.I. has not provided USCIS with the results of their criminal background and/or name check relating to their application. (Compl. ¶ 20.)

Based on the foregoing, Plaintiffs advance several substantive causes of action.  First, they seek relief under the A.P.A., principally 5 U.S.C. §706(1), which provides that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed" and 5 U.S.C. §555(b), which provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  (Compl. ¶¶ 1, 27.)  Second, Plaintiffs petition the Court to issue a writ of mandamus pursuant to 28 U.S.C. §1361, compelling Defendants to adjudicate their application.  Third, Plaintiffs seek relief under the Declaratory Judgment Act, 28 U.S.C. §2201.  (Compl. ¶ 1.)  Finally, Plaintiffs invoke the United States Constitution.  (Id.)

On February 12, 2007, Defendants filed a motion for a 60-day extension of time to answer the Complaint.  The basis for that motion was that the application for the parents, He Li and Changai Zhuo had recently been processed and it appeared that their application would be approved.  (Doc. No. 4, ¶ 5.)  In addition, USCIS had taken the extraordinary measure to ask the FBI to expedite the son's application meaning that it was possible that this entire action might soon become moot.  (Id. ¶ 7.)  Defendants noted, however, that the son's application would

only be processed "assuming the it is possible to expedite the FBI name check, and the son's name and fingerprint checks reveal that the son is eligible for the discretionary adjustment of status benefit, and do not reveal any national security or public safety risks." (Id.)

Attached as Exhibits A and B are the approval notices for the I-485 application for the parents, He Li and Changai Zhuo. Unfortunately, the son's application remains pending. Accordingly, while the parent's action is now moot, Defendants are forced to move to dismiss the son's claims for the reasons explained in more detail below.

III. THIS MOTION SHOULD BE GRANTED

A. The Immigration & Nationality Act

We begin with the adjustment-of-status statute, Section 245(a) of the I.N.A., 8 U.S.C. §1255(a). This provides, in terms, that the status of an alien who has been admitted or paroled into the United States "<u>may</u> be adjusted by the [Secretary], <u>in his discretion</u> and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . ." (emphasis added). Granting or denying the application is thus discretionary. Significantly, neither the face of the statute nor the enabling regulations specify a time frame within which the Secretary must act on the

4

application.  Id.; 8 C.F.R. Pt. 245.

The process, in short, is quintessentially discretionary, and it is one which is removed from the ambit of judicial review by two subsections of 8 U.S.C. § 1252:

(a) First, Section 1252(a)(2)(B)(i) provides that, notwithstanding any other provision of law, including the mandamus statutes, 28 U.S.C. §§ 1361 and 1651, "no court shall have jurisdiction to review any judgment regarding the granting of relief under section . . . 1255 of this title, . . . ."[1]  In addition, Section 1252(a)(2)(B)(ii) expressly precludes judicial review of "any other decision or action of the . . . Secretary of Homeland Security the authority of which is specified under this subchapter to be in the discretion of the . . . Secretary of Homeland Security . . ." (emphasis added).  See e.g., Safadi v. Howard, No. 1:06CV1055, 2006 WL 3780417, at *2-4 (E.D. Va. Dec. 20, 2006) (discussing Section 1252(a)(2)(B) and granting motion to dismiss); Sharkey v. Ganter, No. 05 Civ. 5577(PAC), 2006 WL 177156, at *2-4 (S.D.N.Y. Jan. 24, 2006)(same).

---

[1] As amended by the REAL ID Act of 2005, H.R. 1268, 109th Cong. (2005)(enacted), Pub. L. No. 109-13, Div. B, 119 Stat. 231 ("the R.I.D.A.").

(b) Second, Section 1252(g) of Title 8 states that except as otherwise provided in that section, and again notwithstanding any other provision of law, including the mandamus statutes, 28 U.S.C. §§ 1361 and 1651, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any aliens."[2]  In this regard, the case of <u>Gomez-Chavez v. Perryman</u>, 308 F.3d 796 (7th Cir. 2002) is directly on point.

There, the alien filed an I-130 petition for alien relative, an I-485 petition to adjust status, and an I-212 petition for leave to re-apply for admission after removal, <u>i.e.</u>, a waiver of inadmissibility.  He also commenced an action for a declaratory judgment and a writ of mandamus, asserting that the immigration service had improperly refused to adjudicate his I-212.

The Court of Appeals for the Seventh Circuit ruled, however, that petitioner's arguments "fit[] squarely within the steps covered by the prohibition on judicial review" set forth in Section 242(g) of the statute:

> Under § 1252(g), courts are barred from
> reviewing discretionary decisions to

---

[2] As amended by the R.I.D.A.

>     commence proceedings, adjudicate cases,
>     or execute removal orders.

308 F.3d at 800, citing Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999).

The court of appeals noted further that these "strict limitations" apply not only to affirmative actions, but to refusals to act as well.  Thus, an alien attempting to seek judicial review of such "discretionary measures" cannot evade the bar of Section 242 "by the simple expedient of recharacterizing a claim as one challenging a refusal to act."  308 F.3d at 800. See, e.g., Castillo v. Ridge, 445 F.3d 1057 (8th Cir. 2006) (mandamus not available to compel action on request for Section 1182(h) waiver of inadmissibility); Li v. Agagan, No. 04-40705, 2006 WL 637903, at *3-4 (8th Cir. Mar. 14, 2006) (citing Section 1252(g), court denied petition for writ of mandamus to compel adjudication of adjustment of status application); Kailash v. Chertoff, No. 05-5494, 2006 WL 938523, at *1 (E.D. Pa. Apr. 10, 2006) (citing Section 1252(g), court declined to entertain cause of action for relief from denial of waiver of inadmissibility as predicate to adjustment of status), appeal pending (Third Circuit, No. 06-2373).

> B. Mandamus and Administrative Procedure Act

Nonetheless, Plaintiffs invoke the jurisdiction of the

Court the mandamus statute, 28 U.S.C. §1361, and the A.P.A. The Government respectfully submits that the decision of the Supreme Court of the United States in <u>Norton v. So. Utah Wilderness Alliance</u>, 542 U.S. 55 (2004), disposes of both prongs of this jurisdictional allegation.

There, the Court addressed, <u>inter alia</u>, the language in 5 U.S.C. § 706(1) that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed," 542 U.S. at 62. The Court noted, with emphasis, that "the only agency action that can be compelled under the APA is action legally <u>required</u>. This limitation appears in § 706(1)'s authorization for courts to 'compel agency action <u>unlawfully</u> withheld'" 542 U.S. at 63 (emphasis original).

Further, the Court reasoned further that the APA simply extended the traditional practice, prior to its passage, of achieving judicial review through a writ of mandamus and that the mandamus remedy was normally confined to enforcement of "'a specific, unequivocal command,'" <u>id</u>., <u>quoting</u> <u>ICC v. New York, N.H. & H.R. Co</u>., 287 U.S. 178, 204 (1932) and <u>citing</u> <u>Kendall v. United States ex rel. Stokes</u>, 12 Pet. 524, 613 (1838)("precise, definite act . . . about which [an official] had no discretion whatsoever"); <u>Vermont Yankee Nuclear Power Corp. v. Nat. Res. Defense Council, Inc</u>., 435 U.S. 519, 546 (1978) (§ 706[1]

empowers a court only to compel an agency "to perform a ministerial or non-discretionary act").

The Court added that Section 706(1) also speaks of agency action which is "unreasonably delayed," 542 U.S. at 63 n.1, the essential allegation here. However, "a delay cannot be unreasonable with respect to action that is not required," id. Thus, a claim under Section 706(1) can go forward only "where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take," id. at 64 (emphasis original). Nor, under the Court's rationale, could a writ of mandamus issue, absent such required agency action. In short, the APA analysis and the mandamus analysis are one and the same.

Norton is directly on point. Adjudication of an adjustment-of-status application is a manifestly discretionary task; neither the statute nor the applicable regulations specify a time frame with which the adjudication should take place; there is no "discrete agency action which it is required to take," 542 U.S. at 64; there is no action which has been "unlawfully withheld;" nor, therefore, can it be said that the agency's action has been "unreasonably delayed," 542 U.S. at 63 n.1.

Thus, it is not surprising that there is a significant body of authority, rejecting efforts, such as those of the

9

Plaintiffs here, to invoke the jurisdiction of the district courts.  These cases repeatedly reason that mandamus is inapplicable, precisely because of the discretionary nature of the process at issue, and that APA review is similarly inappropriate, inter alia, because the INA "preclude[s] judicial review," 5 U.S.C. § 701(a)(1), and because the A.P.A. expressly exempts "agency action . . . committed to agency discretion by law, " 5 U.S.C. §701(a)(2)(emphasis added).  See, e.g., Castillo v. Ridge, 445 F.3d 1057 (8th Cir. 2006)(mandamus inappropriate); Li v. Agagan, 2006 WL 637903 (8th Cir.)(non-precedential)(same); Safadi v. Howard, 2006 WL 3780417 (E.D. Va.) (rejecting mandamus and A.P.A. allegations, citing, inter alia, 5 U.S.C. §701[a][2]); Keane v. Chertoff, 419 F.Supp.2d 597 (S.D.N.Y. 2006) (same, citing, inter alia, 5 U.S.C. §701[a][2]); Sharkey v. Ganter, 2006 WL 177156 (S.D.N.Y.) (neither mandamus nor A.P.A. applicable, citing, inter alia, 5 U.S.C. §701[a][2]); Mustafa v. Pasquerell, 2006 WL 488399 (W.D. Tex.) (rejecting mandamus and A.P.A. allegations and citing Norton v. So. Utah); Karan v. McElroy, 2003 WL 21209769 (S.D.N.Y.) (rejecting mandamus and A.P.A. allegations); Zheng v. Reno, 166 F.Supp.2d 875, 879-880 (S.D.N.Y. 2001) (judicial creation of duty to act on adjustment-of-status application within specified time frame, where none is prescribed by statute, "'would have potential for mischievous interference

with the functioning of already overburdened administrative agencies,'", quoting Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1182 [2d Cir. 1978]); Rahman v. McElroy, 884 F.Supp.2d 782 (S.D.N.Y. 1995)(mandamus does not lie to require immigration service to schedule adjustment-of-status interviews at specific time or in specific sequence).  Cf. Dridi v. Chertoff, 412 F. Supp. 2d 465 (E.D. Pa. 2005) (action to compel adjudication of I-129F petition for alien fiancee -- held, mandamus inappropriate absent specified time for adjudicating petition).  But see, e.g., Salehian v. Novak, 2006 WL 3041109 (D. Conn.) (exercising mandamus jurisdiction to compel adjudication of adjustment-of-status application, citing cases, without, however, citing Norton); Kim v. Ashcroft, 340 F. Supp. 2d 384 (S.D.N.Y. 2004) (same, also not citing Norton).³

The restraint exercised by the majority of the above cases is entirely appropriate, for reasons articulated in the recent decision in Manzoor v. Chertoff, 2007 WL 413227 (E.D.

---

³ Accord, Paunescu v. INS, 76 F.Supp.2d 896 (N.D. Ill. 1999) and Agbemaple v. INS, 1998 WL 292441 (N.D. Ill.).  In the wake of the Seventh Circuit's analysis in Gomez-Chavez, supra, p.5, 308 F.3d at 796, however, the precedential value of North District of Illinois decisions in Paunescu and Agbemaple is questionable.

Va.), a closely analogous, naturalization case. We emphasize that naturalization and adjustment of status are very different processes and that they implicate entirely different statutory frameworks. Nonetheless, Manzoor's cogent and thoughtful observations about judicial intervention in the application process pertain here as well and with equal force.

First, Manzoor observes that the courts are ill-equipped to conduct background checks of naturalization applicants. In some cases, follow-up inquiry by the F.B.I. may be necessary, and once this process is competed, evaluation of the data assembled by the F.B.I., as well as any follow-up questioning of the applicant, are best left to the USCIS. 2007 WL 413227 at *7. The same can readily be said of adjustment-of-status applicants.

Moreover, Manzoor quite frankly, and we believe appropriately, notes that it has no desire to provide any incentive to applicants to commence litigation as a device for expediting the naturalization process. Id. at *7. It adds that the lawsuits such as the one before it (and the same is true of the instant action) "divert CIS's attention and resources away from the adjudication of naturalization applications." Id.

Thus, Manzoor concludes that it "has no desire to make the filing of a lawsuit a means for a naturalization applicant to

'jump to the front of the line,'" id.  Such a result, while obviously addressing whatever injustice the plaintiff may have endured, only creates another injustice in its place, by forcing the applicant who did not file a lawsuit to wait even longer, while the litigation plaintiffs receive priority to which they have no intrinsic entitlement.  Again, there is absolutely no principled basis on which to distinguish between the naturalization applicant before the court in Manzoor and the adjustment-of-status applicant here.

Ultimately, the real underlying issue boils down to one of resources.  As Manzoor notes, in fiscal year 2006, the F.B.I. processed more than 3.4 million name checks.  2007 WL 413227 at *2.  With an increase in support, the F.B.I. could undoubtedly do better, but this is a budgetary issue which needs to be addressed at the legislative and executive levels, and not, we respectfully submit, by the judiciary.  See, e.g., Mustafa, supra, 2006 WL 488399 ("'delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-911 world,'" quoting Alkenani v. Barrows, 356 F.Supp.2d 652, 657 [N.D. Tex. 2005]).

This is precisely the point with which the court concluded its opinion in Safadi:

> It is worth noting that plaintiff's

13

> frustration over the pace of the adjudication process is better addressed to the political branches which, as the Supreme Court has noted, have "the responsibility for regulating the relationship between the United States and our alien visitors."

2006 WL 3780417 at *4 n.7, quoting Mathews v. Diaz, 426 U.S. 67, 81 (1976).

### C. The Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C. § 2201 also does not provide an independent basis for subject mater jurisdiction. See, e.g., Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 351 (3d Cir. 1986); Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950) (holding that the Declaratory Judgment Act "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction"); see also Chaudry v. Chertoff, No. 06-1303 (PAM/JSM), 2006 WL 2670051, at *3 (D. Minn. Sept. 18, 2006) (dismissing complaint and holding that the Declaratory Judgment Act did not provide jurisdiction over complaint seeking a writ of mandamus to compel the USCIS to process the plaintiff's I-485 petition).

### CONCLUSION

For the foregoing reasons, the Government respectfully requests that this motion be granted.

```
                    Respectfully Submitted,


                    COLM F. CONNOLLY
                    United States Attorney

          By:       /s/ Seth M. Beausang
                    Seth M. Beausang (I.D. No. 4071)
                    Assistant United States Attorney
                    The Nemours Building
                    1007 Orange Street, Suit 700
                    Wilmington, DE 19801
                    (302) 573-6277
```

## CERTIFICATE OF SERVICE

I hereby certify this 11th day of April, 2007, that a copy of the foregoing Government's Motion to Dismiss and Memorandum in support therof, and Proposed Order was served by United States Mail, postage prepaid, first-class on:

> He Li
> Changai Zhuo
> Zehao Li
> 403 King Rail Court
> Middletown, DE  19709


                              /s/ Seth M. Beausang
                              Assistant United States Attorney